UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

EVERGREEN FLYING SERVICES,        *        CIVIL ACTION NO.  15-2574
INC., ET AL.

VERSUS                            *        JUDGE ROBERT G. JAMES

THE TOWN OF RAYVILLE, ET AL.      *        MAG. JUDGE KAREN L. HAYES

REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to

28 U.S.C. § 636(b)(1)(B), is a motion to dismiss for failure to state a claim upon which relief can

be granted, Fed.R.Civ.P. 12(b), filed by defendants, Town of Rayville, Mayor Harry Lewis, and

James Smith.  [doc. # 7].  The motion is opposed.  For reasons assigned below, it is

recommended that the motion to dismiss be GRANTED IN PART, with the remaining state law

claims REMANDED to state court.

Background

On January 3, 2008, Brandon Mulhearn, acting on behalf of Evergreen Flying Services,

Inc. ("Evergreen"), and Mayor Harry Lewis, acting on behalf of the Town of Rayville (the

"Town"), executed a 50 year Hangar Lease Agreement ("HLA"), retroactive to October 20, 2007.

(HLA; Petition for TRO, Injunctive Relief, & Damages, Exh A).  The HLA specified that the

Town would lease certain land at the John E. Hooks Memorial Airport ("Rayville Airport") to

Evergreen for $200 per month, and upon consideration of Evergreen's prior construction of a

hangar and office facility, as well as its promise to build another hangar to establish a Fixed Base

Operator ("FBO") facility.  *Id.*

Four years later, in 2012, Evergreen, in a joint venture with its principal, Brandon

Mulhearn, and Young's Aircraft Repair, L.L.C. ("Young's") developed a plan for the expansion

of the existing facilities at the Rayville airport.  (Petition for Perm. Injunction & Damages).  The

purpose of the additional construction was to operate an aircraft repair business and an aviation

history museum.  *Id.*  In August 2012, Mulhearn initiated discussions with Mayor Lewis and

James Smith (the Town's airport manager and economic development officer), about

constructing two additional hangars next to the space leased by Evergreen.  *Id.*  In January 2013,

an airspace study was completed.  *Id.*  Nevertheless, the Town, Mayor Lewis, and James Smith

have refused to process the application to lease additional space for development.  *Id.*

Two years later, in April 2015, the Town notified Evergreen that it had to pay a $100

deposit for water and sewerage (albeit, Evergreen actually maintained water and sewerage

services through Start Water System, Inc.).  (Petition for TRO, Injunctive Relief, & Damages).

When, by May 28, 2015, Evergreen failed to pay the deposit, the Town placed a lock on

Evergreen's water meter.  *Id.*  The Town eventually removed Evergreen's water meter, and cut

off its water supply, which effectively shut down Evergreen's business, thus inflicting irreparable

harm. *Id.*

Accordingly, on June 8, 2015, Evergreen filed a "Petition for Temporary Restraining

Order, Injunctive Relief, and Damages" ("First Petition") against the Town in the 5th Judicial

District Court for the Parish of Richland, State of Louisiana.  The First Petition set forth the

lessor/lessee relationship between the Town and Evergreen, and sought a temporary restraining

order ("TRO"), preliminary injunction, together with a permanent injunction to restore and

preserve water and sewerage services at Evergreen's hangars and office.  ("First Petition").  The

suit also requested damages, interest, and attorney's fees.  *Id*.  On June 8, 2015, a state court

judge granted Evergreen's request for a TRO, thereby requiring the Town to restore Evergreen's

water service.  (Order; Notice of Removal, Exh. B).

On September 21, 2015, Evergreen, Mulhearn, and Young's filed a "Petition for

Permanent Injunction and Damages" ("Second Petition") against the Town, Mayor Lewis, and

James Smith in the same suit as the First Petition.  The Second Petition adopted the allegations of

the First Petition, and added that since 2013, defendants had refused to process plaintiffs'

application to lease additional space for development of their interests at the Rayville Airport.

(Second Petition).  Plaintiffs further alleged that defendants' actions violated their obligations to

develop the airport under 49 U.S.C. § 47101, *et seq*., and "Grant Assurance 22" that was

incorporated into agreements with recipients of federal aviation funds, including the Town's

agreement.  (2nd Petition, ¶¶ 15-22).  Moreover, because plaintiffs' development plans would

result in the creation of approximately ten new jobs, plaintiffs surmised that defendants'

actions/inaction must be motivated by racial discrimination or personal economic advantage.  *Id*.,

¶ 27.  Consequently, plaintiffs maintain that defendants violated their rights under 42 U.S.C. §

2000d and 42 U.S.C. § 1983.  *Id*., ¶ 28-29.

The Second Petition also asserted a claim for tortious interference with business relations,

as well as amorphous claims for negligence and intentional tort.  *Id*., ¶¶ 31-32.  Plaintiffs seek

damages "under law and contract," plus attorney's fees under 42 U.S.C. § 1988.  *Id*., ¶ 29-30.

Plaintiffs further petition the court to permanently enjoin defendants from interfering with

Evergreen's water and sewerage services.  *Id*., Prayer.

On October 23, 2015, defendants filed exceptions of unauthorized use of summary proceeding, improper cumulation of actions, prescription, and no right of action in the state court. (Notice of Removal, ¶ 15, Exh. G).  That same date, however, they removed the case to federal court on the sole basis of federal question jurisdiction, 28 U.S.C. § 1331.  *Id.*, ¶ 12 (version 2).

On November 23, 2015, defendants re-packaged their state court exceptions into the instant Rule 12(b) motion seeking dismissal of plaintiffs' claims on the grounds of misjoinder/improper cumulation of actions, prescription, no right of action, and insufficient allegations to support individual capacity claims against Harry Lewis and James Smith.  On December 22, 2015, plaintiffs filed an untimely[1] opposition urging the court to deny defendants' motion because 1) the matter now was governed by the Federal Rules of Civil Procedure; 2) to the extent not based on conduct that occurred in 2015, the suit remains a personal action subject to a ten-year prescriptive period under Louisiana Civil Code Article 3499; 3) the petition asserts claims against the individual defendants in their individual capacities; and 4) Brandon Mulhearn is a real party in interest.

On January 8, 2016, the court granted defendants leave to file a reply brief out-of-time, in which defendants emphasized that plaintiffs' § 1983 claims were untimely, and that the petition failed to state a claim for relief against the individual defendants.  [doc. #s 17-18].   The matter is ripe.

## Discussion

The court pretermits consideration of defendants' procedural arguments under state law because it is manifest that plaintiffs' Second Petition does not state a claim for relief under

_____

[1]  *See* Notice of Motion Setting [doc. # 8].

4

federal law.[2]

a)      12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state

a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for

relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is

entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127

S.Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for

the court "to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in

between. *See Iqbal, supra*.  Plausibility simply calls for enough factual allegations to raise a

reasonable expectation that discovery will reveal evidence to support the elements of the claim.

*See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Although the court must accept as true all

factual allegations set forth in the complaint, the same presumption does not extend to legal

conclusions. *Iqbal, supra*.  A pleading comprised of  "labels and conclusions" or "a formulaic

---

[2]  To the extent that the undersigned has expanded upon the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).  In any event, the court possesses the inherent authority to dismiss a party sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).

recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision."  *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted).  Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument."  *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011).[3]

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records.  *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).  Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

---

[3] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."  *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

6

b)    Federal Law Claims

As an initial matter, it is manifest that the Airport and Airway Improvement Act of 1982

("AAIA"), 49 U.S.C. § 47101, *et seq*., and by extension, Grant Assurance 22,[4]  do not accord a

private right of action.  *See McCasland v. City of Castroville*, 514 Fed. Appx. 446, 448 (5th

Cir.2013) (citations omitted); *E. Hampton Airport Prop. Owners Ass'n, Inc. v. Town Bd. of Town

of E. Hampton*, 72 F. Supp. 2d 139, 146 (E.D. N.Y. 1999) (collecting cases).[5]

In contrast, § 601 of Title VI of the Civil Rights Act of 1964 *does* authorize private suits.

*Alexander v. Sandoval,* 532 U.S. 275, 279, 121 S.Ct. 1511 (2001).  It provides that "[n]o person

in the United States shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance."  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d

398, 407 (5th Cir.2015) (citing 42 U.S.C. § 2000d).  Section 601, however, "prohibits only

---

[4]  Grant Assurance 22 is a regulation implementing the Federal Aviation Administration's
statutory mandate to ensure availability of airports for public use without unjust discrimination.  *BMI
Salvage Corp. v. F.A.A.*, 488 Fed. Appx. 341, 348 (11th Cir.2012).

[5]  That does not mean that plaintiffs are without recourse.  Rather,
[t]he FAA's enforcement regulations permit a party "directly and substantially
affected" by an airport sponsor's alleged noncompliance with a Grant Assurance to
file a formal complaint with the FAA. 14 C.F.R. § 16.23(a). If the pleadings
demonstrate a "reasonable basis for further investigation," the FAA investigates the
allegations, after which the Director of the Office of Airport Safety and Standards
issues an "initial determination."14 C.F.R. §§ 16.29(a),16.31(a). If the Director
dismisses the complaint, the interested party can file an administrative appeal to the
Associate Administrator for Airports, who examines the existing record and issues
a final decision without a hearing. 14 C.F.R. §§ 16.31(c),16.33(a)(1). This final
decision is then appealable, but only to a federal court of appeals. 49 U.S.C. §
46110(a); 14 C.F.R. § 16.247(a).
*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, Civ. Action No. 15-2246, 2015 WL
3936346, at *10 (E.D. N.Y. June 26, 2015).

*intentional* discrimination." *Id*. (citation omitted). Moreover, a cause of action under Title VI necessitates "(1) that the defendant have received federal financial assistance the primary objective of which is to provide employment (2) that was applied by the defendant to discriminatory programs or activities." *National Ass'n of Government Employees v. City Public Service Bd. of San Antonio, Tex.*, 40 F.3d 698, 706 n.9 (5th Cir. 1994) (citation omitted). Also, to assert a claim based upon unconstitutional racial discrimination under Title VI and the Equal Protection Clause, "a party must not only allege and prove that the challenged conduct had a differential or disparate impact upon persons of different races, but also assert and prove that the governmental actor, in adopting or employing the challenged practices or undertaking the challenged action, intended to treat similarly situated persons differently on the basis of race." *Castaneda v. Pickard*, 648 F.2d 989, 1000 (5th Cir.1981)

Here, plaintiffs' Second Petition is devoid of facts to support a finding that defendants intentionally discriminated against plaintiffs on the basis of race, color, or national origin. Plaintiffs surmise that, because their proposals would create approximately ten jobs, there is no legitimate explanation for defendants' refusal to consider their development application(s) – aside from race discrimination or corruption. However, the court readily posits that defendants' inaction on the applications may stem from a desire to spread airport development amongst various businesses, rather than concentrate operations with the same, limited group of participants. Alternatively, and possibly in contravention of their obligations under Grant 22, *see* discussion, *supra*, defendants may not want to expand the airport because of concerns expressed by nearby land or homeowners, i.e., the so-called Not In My Back Yard ("NIMBY") crowd. Regardless, plaintiffs have not alleged that they were treated differently than similarly situated

persons on the basis of race.[6]

In short, where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n] —that the pleader is entitled to relief." *Iqbal, supra* (citation and internal quotation marks omitted).[7]

Plaintiffs' Second Petition also fails to state a claim for relief under 42 U.S.C. § 1983. Section 1983 prescribes that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983. Section 1983, however, does not create any substantive rights; it merely provides a remedy for the rights designated therein. *Harrington v. Harris*, 118 F.3d 359, 365 (5ᵗʰ Cir. 1997) (citation omitted). Thus, "[t]o state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether

---

[6] In fact, there is some question whether a corporate entity such as Evergreen and Young's has a racial identity at all. The Supreme Court stated, albeit in dictum, that a corporation has no racial identity, and cannot be the direct target of discrimination. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263, 97 S. Ct. 555, 562 (1977). More recently, at least in the context of 42 U.S.C. § 1981, courts have recognized that "[w]hen a corporation has acquired a racial identity, either as a matter of law or by imputation, then it can be the direct target of discrimination." *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1059 (9th Cir. 2004). In this case, it is not clear that the plaintiff-entities have acquired racial identities.

[7] In their opposition to the motion to dismiss, plaintiffs assert that they intend to conduct discovery to uncover why defendants would deny their applications. However, because under Rule 12(b)(6), the court looks solely at the allegations on the face of the pleadings, discovery will not assist plaintiffs in satisfying their pleading burden. *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir.2009). Indeed, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal, supra*.

plaintiff has alleged a violation of a constitutional right at all.  *Id.  Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

Here, plaintiffs do not assert which of their myriad constitutional rights defendants purportedly violated.  However, plaintiffs contend that they were discriminated on the basis of race, which arguably invokes the Fourteenth Amendment's Equal Protection Clause.  To state an equal protection claim, a § 1983 plaintiff must allege either that "(a) a state actor intentionally discriminated against [him] because of membership in a protected class [,] or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Texas Dep't of Ins. – Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (citations and internal quotation marks omitted).  Thus, to survive the pleading stage on a race-based discrimination claim under the Equal Protection Clause a plaintiff must allege facts to show that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."  *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) (citations omitted).

Here, aside from representing the races of the parties, plaintiffs' complaint is completely devoid of any *factual* allegations to suggest that any purported unequal treatment by the Town stemmed from discriminatory intent or animus.  Consequently, plaintiffs' complaint does not state a claim for race-based discrimination under the Equal Protection Clause.  *See Bowlby, supra* (no factual allegations that defendants' actions were the result of intentional discrimination); *Smith v. Kimbhal*, 421 F. App'x 377, 379 (5th Cir. 2011) (conclusory assertions of improper motive or retaliatory animus do not suffice to overcome a Rule 12(b)(6) dismissal).

To the extent that plaintiffs allege that defendants violated their right to equal protection

10

by arbitrarily and capriciously denying their application(s), they conceivably advance their equal protection claim under a "class of one" theory which does not require membership in a protected class or group. *Mata v. City of Kingsville, TX*, 275 F. App'x 412, 415 (5th Cir. 2008) (citation omitted). Further, the Fifth Circuit recognizes three different types of "class of one" claims: "selective enforcement"; "personal vindictiveness"; and adverse zoning permit decisions. *Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 685 (S.D. Tex. 2009), *affirmed* 669 F.3d 225 (5th Cir. 2012) (citing *Mikeska v. City of Galveston*, 451 F.3d 376, 381 n.4 (5th Cir. 2006)). Only the first two types of "class of one" claims require a showing of improper motive, animus, or ill will. *See Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 388 n.2 (5th Cir. 2008) ("*Lindquist I*") and *Mikeska,* 451 F.3d at 381 n.4.[8]

However, the Town's alleged refusal to authorize or even consider plaintiffs' application(s) is most analogous to an adverse permitting decision, which requires plaintiffs to show that they were treated differently than another similarly situated entity/person, with no rational basis for the distinction. *Mikeska, supra*; *Bush v. City of Gulfport, Miss.*, 454 F. App'x 270, 280-81 (5th Cir. 2011). Furthermore, to prevail on their claim, plaintiffs "must carry the heavy burden of negativ[ing] any reasonably conceivable state of facts that could provide a rational basis for their differential treatment." *Lindquist I, supra* (citations and internal quotation marks omitted). In fact, "[u]nder the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim." *Unruh v. Moore*, 326 F. App'x 770, 772

---

[8] An element that is lacking in factual support here.

(5th Cir. 2009) (citation omitted).[9]

In this case, plaintiffs' complaint fails to set forth requisite facts to support either element of their "class of one" equal protection claim:  1) they do not allege a comparator; 2) there are plausible, legitimate rationales for the Town's actions.  *See* discussion, *supra*.

Insofar as plaintiffs intended to invoke their right to due process,[10] they are required to "identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest."  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted).  Furthermore, "[p]roperty interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *McCasland*, 514 Fed. Appx. at 448 (5th Cir.2013) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701 (1972)).

Here, with the possible exception of Evergreen, plaintiffs have not alleged an entitlement to an airport lease that is sufficiently definite to be considered a property interest.  *McCasland, supra*.  Moreover, the alleged agreement between the United States and the Town does not

---

[9]  The Supreme Court has recognized that,
states are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude . . . in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.
*City of New Orleans v. Dukes*, 427 U.S. 297, 303-04, 96 S. Ct. 2513, 2516 (1976) (citations omitted).

[10]  The Fourteenth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of law."  U.S. CONST. AMEND. XIV.

12

endow plaintiffs with a cognizable property interest.  *Id.*[11]  Also, defendants' apparent refusal to

contract with plaintiffs does not impair plaintiffs' liberty interest in their right to contract.

*McCasland, supra*.

Even if plaintiffs' had a protected interest in securing new leases with defendants, the

federal courts are loath to intervene in land-use decisions, and will sustain the local government

decision against a substantive due process challenge so long as there is "any conceivable rational

basis" for the determination.  *See FM Properties Operating Co. v. City of Austin*, 93 F.3d 167,

174 (5th Cir.1996) (citations omitted).  "If the question is at least debatable, there is no

substantive due process violation."  *Id*. (citation omitted).  In fact, "the due process clause does

not require a state to implement its own law correctly[, nor does] [t]he Constitution ... insist that

a local government be right."  *Id*. (citation omitted).

This court has posited legitimate rationales for defendants' ongoing reticence in

approving plaintiffs' plans.  *See* discussion, *supra*.  Further, as to Evergreen's claim that the

Town improperly shut off its water supply, the Town may have acted under the mistaken

impression that all tenants at the airport were required to procure water services from the Town.

In any event, that issue has been resolved via the TRO issued by the state court.  *See Simms v.*

*Barbour*, 09-0084, 2010 WL 5184845, at *3-4 (S.D. Miss. Dec. 15, 2010) (plaintiff's property

interest can be fully protected by an ordinary breach-of-contract suit).

Finally, 42 U.S.C. §1988 provides for an award of reasonable attorney fees to a prevailing

---

[11]  Young's and Mulhearn seem to argue that they are third-party beneficiaries under the
agreement between the United States and the Town.  *See* Opp. Memo., pg. 3.  However, the Fifth
Circuit declined to recognize a protected property interest under similar circumstances.  *McCasland,*
*supra*.

party in any action or proceeding to enforce, *inter alia*, a provision of 42 U.S.C. § 1983. However, having recommended dismissal of all of plaintiff's federal claims, dismissal of plaintiffs' claim under 42 U.S.C. § 1988 necessarily follows, as plaintiffs cannot be prevailing parties.

As instructed by *Iqbal*, the court has accorded no weight to the generous dose of conclusory allegations set forth in plaintiffs' complaint. *See Iqbal, supra*. Plaintiffs' remaining allegations contain no facts sufficient to confer plausibility upon their federal law claims. *Id.*; *see also Jabary v. City of Allen*, 547 F. App'x 600, 605 (5th Cir. 2013) (plaintiff's statements fail to "nudge his claim of purposeful discrimination across the line from conceivable to plausible"). Instead, the complaint remains no more than "a formulaic recitation of the elements of a cause of action," which does not satisfy the Rule 8 pleading standard. *Id*. Under these circumstances, there is no reasonable expectation that discovery will reveal evidence to support the missing elements of the federal claims. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

b)    Remaining State Law Claims

When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367.[12]  In fact, this is the general rule. *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted). The undersigned further observes that interpretation and application of Louisiana law, and particularly the procedural arguments raised by defendants, remains within the particular province and expertise of the state

---

[12]   In the case *sub judice*, there is no indication that the court may exercise diversity jurisdiction, 28 U.S.C. § 1332.

courts.  Accordingly, the twin interests of comity and efficiency dictate that the state law claims be remanded to state court.[13]

**Conclusion**

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), filed by defendants, Town of Rayville, Mayor Harry Lewis, and James Smith [doc. # 7] be GRANTED IN PART, and that plaintiffs' federal law claims be DISMISSED.[14]

IT IS FURTHER RECOMMENDED that plaintiffs' remaining state law claims be REMANDED to the 5th Judicial District Court for the Parish of Richland, State of Louisiana.  28 U.S.C. §§ 1367(c)(3) and 1441(c)(2).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[13]  If plaintiffs eventually uncover facts to support a federal claim, then they may properly amend their petition in state court to so allege.  At that point, defendants could re-remove the case to federal court.

[14]  The court takes no position on the remainder of defendants' arguments urged in support of their motion, which the state court may address in the first instance upon remand.

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 16th day of February 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE